UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAQUILLE JOEL SHERMAN,

    Plaintiff,

v.

CONNIE HORTON,

    Defendant.

Case No. 2:18-cv-12032

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABIITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

The case involves a habeas corpus petition filed under 28 U.S.C. § 2254. After a jury trial in Wayne County Circuit Court, Petitioner Shaquille Joel Sherman was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529; carjacking, in violation of Mich. Comp. Laws § 750.529a; unlawfully driving away an automobile ("UDAA"), in violation of Mich. Comp. Laws § 750.413; receiving and concealing stolen property, in violation of Mich. Comp. Laws § 750.535(7); and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. *See* ECF 9-8, PgID 389. Petitioner was sentenced to consecutive 10 to 20-year terms for the armed robbery and carjacking convictions, a consecutive 2-year term for the felony-firearm conviction, and lesser concurrent terms for the other convictions, resulting in an effective composite sentence of 22 to 42 years. *See* ECF 9-10, PgID 422.

1

The petition raises eleven claims: (1) insufficient evidence was presented at trial to sustain Petitioner's convictions, (2) Petitioner's sentence was disproportionate to the severity of his crimes, (3) Petitioner's convictions for both carjacking and UDAA violate the Double Jeopardy Clause, (4) the prosecutor committed misconduct by vouching for the credibility of the victim, (5) the arrest warrant and charging documents contained inaccurate information, (6) Petitioner was denied the effective assistance of appellate counsel, (7) insufficient evidence was presented to sustain Petitioner's armed robbery conviction, (8) the prosecutor failed to correct false testimony, (9) the trial court incorrectly scored the sentencing guidelines, (10) Petitioner was denied the effective assistance of trial counsel, and (11) the above errors accumulated to deny Petitioner his right to a fair trial. *See* ECF 1, PgID 8–34.

The Court will deny the petition because each claim is either without merit or barred by Petitioner's procedural defaults. The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis should Petitioner chose to appeal this decision.

## BACKGROUND

At Petitioner's jury trial, DaVe' Blevins testified that on November 17, 2012, at about 9:00 p.m., she went to a Detroit gas station to fuel her Dodge Magnum and put air in her tires. ECF No. 9-7, at 313–16. Blevins was not alone—her three-year-old daughter, nine-year-old sister, and nine-year-old cousin were also in her vehicle. *Id.* at 314–15. While Blevins was fueling her vehicle, she saw a black truck pull up to the adjacent pump. *Id.* at 315–16. After she moved her car to the air pump and started

to put air in a tire, two men exited the truck and approached her. *Id.* at 316–17. One of the men, who Blevins identified in court as Petitioner, pulled out a gun, said "you know what time it is," and told her to give him the car keys and to get the kids out of the car. *Id.* at 317–19. The area was well lit, and Blevins got a good look at Petitioner. *Id.* at 318–19. Blevins testified that although Petitioner was wearing a hood during the robbery, she was staring at his face the entire time. *Id.* at 332, 334.

Petitioner jumped into the driver's seat while Blevins removed the three children. *Id.* at 317–18. Blevins lost sight of the other man. *Id.* at 318. Blevins grabbed her cell phone from the cup holder as she exited the vehicle. *Id.* at 319. She threw the car keys at Petitioner. *Id.* Blevins' wallet, her sister's cell phone, and other items of personal property were in the vehicle when Petitioner drove it away. *Id.* A video from the gas station's security camera system was played during Blevins' testimony, and she was able to narrate the action. *Id.* at 320–24.

Blevins immediately called the police, and when responding police officers arrived, she provided them with descriptions of the perpetrators. *Id.* at 324. She also told the officers that her vehicle was equipped with a GPS system. *Id.* at 325. Blevins subsequently attended an in-person lineup at the police station, and she identified Petitioner as the man who robbed and carjacked her at gunpoint. *Id.* at 326.

Officer Nelson Robinson of the Detroit Police Department's Commercial Auto Theft Section then testified that on November 28, 2012, eleven days after the incident, he went to a residential address in Detroit to look for Blevins' stolen vehicle that had been located by GPS. *Id.* at 335–36. Robinson located the vehicle parked

3

next to a garage in the backyard at the address in question, and subsequently obtained a search warrant. *Id.* at 337–38.

Officer John Metiva, who also worked for the auto theft unit, testified that he accompanied Robinson to execute the warrant. *Id.* at 340–43, Petitioner was not at home when the auto theft unit searched the premises. *Id.* at 343.

Officer Steven Turner, another officer participating in the search, testified that Petitioner's mother, Natasha Sherman, was standing in the front yard when police arrived. *Id.* at 344–46. There were also two men were outside working on a van when the officers arrived. *Id.* at 346. Petitioner's girlfriend, Natasha Woods, was in a bedroom of the home. *Id.* at 346–47. Turner found a key fob in the back bedroom where Petitioner's girlfriend was located. *Id.* at 347–48. He pressed the button on the fob, and it set off the alarm on the victim's Magnum. *Id.* at 348.

Also located in the bedroom was the owner's manual for the stolen vehicle, along with an application for title which had the vehicle's identification number on it. *Id.* at 350. Turner further found the cell phone taken from the vehicle in the bedroom's closet. *Id.* at 351. Officers found a 9mm semi-automatic handgun under an air mattress on the floor of the bedroom. *Id.* at 350. The weapon was loaded with eleven live rounds. *Id.* Turner found court documents in the bedroom containing Petitioner's name and date of birth. *Id.* at 352–53. He also found a photo of Petitioner in the room. *Id.* at 352. The Magnum's license plate was found in the backyard of an abandoned house across the street from Petitioner's house. *Id.* at 353–54.

Petitioner arrived home about three hours into the search, and he was arrested without incident. *Id.* at 355–56. Later that day, Blevins identified Petitioner at a lineup conducted at the police station. *Id.* at 358–360.

Based on this evidence, Petitioner was convicted of the offenses indicated above.

Following sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals. He raised six claims (five of which are now raised as his first through fifth claims): that the evidence was insufficient to establish his identity, that his sentences were not proportional to his convictions, that his sentences were cruel and unusual, that his convictions for carjacking and UDAA violated the Double Jeopardy Clause, that the prosecutor committed misconduct, and that the search warrant affidavit lacked probable cause. *See People v. Sherman*, 2014 WL 6088822, at *1–3 (Mich. Ct. App. Nov. 13, 2014). The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *Id.* The Michigan Supreme Court later affirmed in part and vacated in part. The Michigan Supreme Court vacated the part of the Michigan Court of Appeals' opinion "suggesting that a 'completed larceny' is an element of [UDAA]"—a finding that did not alter the conclusion of the Court of Appeals that sufficient evidence was presented to sustain Petitioner's convictions. *People v. Sherman*, 497 Mich. 1025 (2015) (Table). The Court denied leave to appeal in all other respects. *Id.*

Petitioner then filed a motion for relief from judgment in the trial court and raised six claims. These claims now form Petitioner's sixth through eleventh habeas

5

claims. ECF 9-11. The trial court denied the motion for relief from judgment, finding that Petitioner failed to establish cause and prejudice for failing to raise the claims on direct appeal as required by Michigan Court Rule 6.508(D)(3). ECF 9-12.

After the trial court denied the motion for relief from judgment, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. ECF 9-14, PgID 611–67 The court denied the application for leave to appeal for failure to establish that the trial court erred in denying the motion for relief from judgment. *Id.* at 610. Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but that court denied relief under Michigan Court Rule 6.508(D). ECF 9-16.

## LEGAL STANDARD

28 U.S.C. § 2254(d)(1)–(2) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 103–04 (2011) (internal quotations and citation omitted). To obtain federal habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented

6

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

I. <u>Sufficiency of the Evidence Claim</u>

First, Petitioner claimed that there was insufficient evidence presented at trial to establish his identity as the perpetrator of the crimes. ECF 1, PgID 7–8.

The relevant question for a federal habeas court addressing a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted) (emphasis in original). The question recognizes the trier of fact's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* A habeas court is required to examine the evidence supporting the conviction in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Id.* at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and § 2254(d) apply to Petitioner's

claims, "the law commands deference at two levels in this case: [f]irst, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim as follows:

> Here, the victim testified that she had a "clear view" of [Petitioner] as he approached her with a gun at a gas station and demanded the keys to her vehicle. Although [Petitioner] wore a hooded sweatshirt, the victim testified that she could clearly see his face. The evidence at trial showed that the victim also correctly identified [Petitioner] in a lineup 11 days later. The victim testified that she identified [Petitioner] immediately and was confident in her selection. Viewing this evidence in a light most favorable to the prosecution, *Harverson*, 291 Mich. App. at 175, we conclude that sufficient evidence was presented at trial to establish [Petitioner's] identity as the perpetrator of the charged crimes beyond a reasonable doubt.

*Sherman,* 2014 WL 6088822, at *1.

The Michigan Court of Appeals decision was reasonable. First and foremost, police officers found the stolen vehicle in Petitioner's yard. ECF 9-7, PgID 337. The stolen vehicle's key fob and other items taken from the car were found in what the circumstantial evidence indicated was his bedroom. *Id.* at 347–52. Court documents bearing Petitioner's name and a photograph were also found in the bedroom. *Id.* at

8

352–53. A loaded handgun was found hidden under the mattress. *Id.* at 350. Added to this compelling circumstantial evidence is the fact that the victim identified Petitioner at the subsequent police station lineup. *Id.* at 358–60. In short, there was overwhelming evidence identifying Petitioner as the perpetrator of the crimes. The evidence therefore allowed for the jury to find beyond a reasonable doubt that Petitioner committed the charged offenses. Petitioner's first claim is without merit.

II.     Disproportionate Sentence

Second, Petitioner claimed that his consecutive sentence for armed robbery and carjacking taken together with the two-year term added for the firearm offense—creating a composite sentence of 22 to 42 years' imprisonment—violates the Eighth Amendment's prohibition against cruel and unusual punishments because it is disproportionate to the severity of the offenses. ECF 1, PgID 9–10.

The claim cannot be supported by clearly established Supreme Court law. The United States Constitution does not require strict proportionality between an offense and a prison term. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring) (collecting cases). Further, a sentence within the statutory maximum does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (citation omitted). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473–74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at

9

999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). When the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949).

Here, Petitioner's 22 to 42-year sentence was within the statutory limits for his offenses. And his sentence was not grossly disproportionate to his offenses. Petitioner brandished a loaded handgun at a woman who had three young children in her car. This extremely dangerous conduct allowed the sentencing court to impose a lengthy sentence to protect society. The claim was reasonably rejected by the state court, and it therefore does not provide a basis for granting habeas relief.

III.   Double Jeopardy

Third, Petitioner claimed that his convictions for carjacking and UDAA violate the Double Jeopardy Clause of the Fifth Amendment. ECF 1, PgID 11–12. He claimed that the same conduct was used as the basis for both convictions. The Michigan Court of Appeals rejected the claim because the crimes of UDAA and carjacking each contain an element the other lacks, so convictions for both crimes based on the same conduct do not violate the Double Jeopardy Clause under the "same elements" test established in *Blockburger v. United States*, 284 U.S. 299 (1932). *See Sherman*, 2014 WL 6088822, at \*3 (citing *People v. Cain*, 495 Mich. 874, 874–75 (2013)). Because the

10

Michigan Supreme Court previously held that "UDAA requires proof that defendant moved the vehicle, which carjacking does not, and carjacking requires proof of the use of force or violence, or the threat thereof, which UDAA does not," *Cain*, 495 Mich. at 874–75, the Michigan Court of Appeals properly applied *Blockburger*. Petitioner's third claim therefore lacks merit.

IV.     Prosecutorial Misconduct

Fourth, Petitioner claimed that the prosecutor committed misconduct by vouching for the credibility of the victim. ECF 1, PgID 13–14. The claim is unfounded.

The relevant standard for improper vouching is whether "the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness'[s] credibility." *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987) (quoting *United States v. Dennis*, 786 F.2d 1029, 1046 (11th Cir. 1986)). Generally, the vouching occurs via "blunt comments" or opinions during the trial about the witness's truthfulness or "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (citations omitted).

The record indicates that defense counsel objected to leading questions that the prosecutor asked the victim while the video was played for the jury. ECF 9-7, PgID 321–23. But nothing in the questioning indicates that the prosecutor was suggesting hidden knowledge of the truthfulness of the victim. Rather, it appears the prosecutor was simply trying to speed along the proceedings. *Id.* After the objection,

11

the prosecutor shifted to asking open-ended questions which resulted in the same information being presented—the victim describing how the video showed Petitioner robbing her. *Id.* at 323–25. The claim is therefore without merit.

V. <u>Defective Arrest Warrant</u>

Fifth, Petitioner claimed that the arrest warrant was defective because the officer preparing it misidentified the victim. The claim is not cognizable. Challenges to the propriety of initial proceedings in the state courts are not cognizable in federal habeas corpus, because they do not undermine the validity of a conviction. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("illegal arrest or detention does not void a subsequent conviction").

The method by which a habeas petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."). Consequently, even if Petitioner were able to show that either the warrant or complaint were somehow defective, that fact would not undermine the jury verdict that convicted him. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986). Petitioner's fifth claim therefore lacks merit.

VI. <u>Procedural Default</u>

Respondent contended that Petitioner's remaining claims are procedurally defaulted because Petitioner raised these claims for the first time in his

12

post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3).

A prisoner is precluded from seeking federal habeas review of a claim that he procedurally defaulted in state court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a habeas petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice analysis. *Smith v. Murray*, 477 U.S. 527, 533 (1986). But "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). When the last state court judgment contains no reasoning but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that "later unexplained orders upholding that judgment or rejecting the same claim rest[ed] upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." ECF 9-16, PgID 741. The Michigan Court of Appeals denied his post-conviction appeal in a form order "because

13

[Petitioner] failed to establish that the trial court erred in denying the motion for relief from judgment." ECF 9-14, PgID 610. The Michigan Court of Appeals and Michigan Supreme Court orders did not refer to subsection (D)(3) of Michigan Court Rule 6.508, nor did they mention Petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. "Because the form orders in this case citing [Michigan Court] Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). The Court "must therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection of [Petitioner's] claim." *Id.*

In rejecting Petitioner's post-conviction claims, the Wayne County Circuit Court indicated that he was not entitled to relief because he failed to show cause and prejudice for his failure to raise the issues on direct appeal, as required by Michigan Court Rule 6.508(D)(3). ECF 9-12, PgID 511. Because the trial court denied his post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's claims are procedurally defaulted pursuant to that rule. *See Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007).

Petitioner contends that his post-conviction claims are nonetheless preserved for habeas review because his appellate counsel was ineffective. *See* ECF 1, PgID 21. But Petitioner has made no such showing. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The

14

"process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Murray*, 477 U.S. at 536 (internal quotations and citation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citation omitted).

Petitioner failed to show that his appellate counsel's choice to omit the claims that he raised for the first time in his post-conviction motion for relief from judgment fell outside the wide range of competent representation. Appellate counsel filed a brief on appeal raising what now form Petitioner's two lead habeas claims. Petitioner did not show that appellate counsel's strategy in presenting those two claims and not raising others was deficient or unreasonable. Further, Petitioner filed a pro se supplemental brief during his appeal of right, raising additional claims. *See Sherman*, 2014 WL 6088822, at *3. And Petitioner did not explain why he omitted his defaulted claims from his own supplemental brief during his direct appeal.

Moreover, for the reasons stated by Respondent in her answer to the petition, and the trial court in its opinion denying the motion for relief from judgment, none of the claims raised by Petitioner in his post-conviction motion were "dead bang winners." ECF 8, PgID 137; *see also* ECF 9-12. Because the defaulted claims are not clearly stronger than the claims raised on direct review, Petitioner failed to establish cause for his procedural default of failing to raise the additional claims on direct

15

review. *See McMeans v. Brigano*, 228 F.3d 674, 685 (6th Cir. 2000). Petitioner's remaining claims will therefore be denied.

As none of Petitioner's claims merit relief, the petition will be denied.

VII.     Certificate of Appealability and In Forma Pauperis Status on Appeal

To appeal the Court's decision, a habeas petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c). The applicant is required to show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citation omitted). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because the claims are devoid of merit. A certificate of appealability will therefore be denied.

If Petitioner chooses to appeal the Court's decision, he may not proceed in forma pauperis because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

16

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

**SO ORDERED**.

                                            s/ Stephen J. Murphy, III
                                            STEPHEN J. MURPHY, III
                                            United States District Judge

Dated: May 28, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 28, 2020, by electronic and/or ordinary mail.

                                            s/ David P. Parker
                                            Case Manager